UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| DAVID STAFFORD, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CINTAS CORPORATION, SCOTT D. FARMER, J. MICHAEL HANSEN, and PAUL F. ADLER,<br><br>　　　　Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

　　　　Plaintiff David Stafford ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding Cintas Corporation ("Cintas" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.　　This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Cintas securities between March 6, 2017 and November 13, 2019, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants'

1

violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company is headquartered in this judicial district and the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification (Exhibit A), incorporated by reference herein, purchased Cintas securities during the Class Period and was economically damaged thereby.

7. Defendant Cintas purports to provide corporate identity uniforms and related business services primarily in North America, Latin America, Europe, and Asia. It purports to operate through its Uniform Rental and Facility Services and First Aid and Safety Services segments. The

Company also purports to rent and service uniforms and other garments, including flame resistant clothing, mats, mops and shop towels, and other ancillary items; and provide restroom cleaning services and supplies, and carpet and tile cleaning services, as well as sell uniforms. It also purports to offer first aid and safety services, and fire protection products and services. The Company purports to offer its products and services through its distribution network and local delivery routes, or local representatives to small service and manufacturing companies, as well as major corporations.

8. Cintas is incorporated in Washington and its principal executive office is located at 6800 Cintas Blvd, Mason, Ohio. Cintas's securities trade on the NASDAQ exchange under the ticker symbol "CTAS."

9. Defendant Scott D. Farmer ("Farmer") served as the Company's Chief Executive Officer ("CEO") and Chairman during the Class Period.

10. Defendant J. Michael Hansen ("Hansen") served as the Company's Chief Financial Officer ("CFO") and Executive Vice President during the Class Period.

11. Defendant Paul F. Adler ("Adler") served as the Company's Vice President and Chief Treasurer during the Class Period.

12. Defendants Farmer, Hansen, and Adler are collectively referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

    (c) was privy to confidential proprietary information concerning the Company and its business and operations;

  (d)  was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

  (e)  was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

  (f)  was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

  (g)  approved or ratified these statements in violation of the federal securities laws.

14. Cintas is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Cintas under *respondeat superior* and agency principles.

16. Defendant Cintas and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

## Materially False and Misleading

## Statements Issued During the Class Period

17. On March 6, 2017, the Company filed its "Unaudited Pro Forma Condensed Consolidated Financial Information" with regards to its acquisition of G&K Services, Inc. ("G&K") on Form 8-K with the SEC ("March 2017 Unaudited Financial Information"), which was signed by Defendant Hansen.

18. The March 2017 Unaudited Financial Information stated, in pertinent part, the following about amortization:

> Amortization of intangible assets for customer contracts - The unaudited pro forma condensed consolidated statements of income for all periods include an adjustment for the amortization of newly acquired intangible assets related to customer contracts, net of the current amortization of G&K Services for customer contracts. Intangible assets related to customer contracts are estimated to have a useful life of 10 years and *will be amortized on a straight-line basis over that period*.

(Emphasis added.)

19. The March 2017 Unaudited Financial Information estimated $68.5 million for intangible amortization expenses related to the G&K acquisition.

20. On July 20, 2017, during the Company's fourth quarter 2017 earnings call, Defendant Hansen stated the following regarding intangible amortization expenses related to the G&K acquisition:

> Our guidance includes the following assumptions related to the acquired G&K business: . . . *purchase price amortization expense related to intangible assets of $50 million* . . .

(Emphasis added.)

21. On July 31, 2017, Cintas filed its annual report on Form 10-K with the SEC for the year ended May 31, 2017 (the "2017 10-K"). The 2017 10-K was signed by Defendants Farmer, Hansen, and Adler. Attached to the 2017 10-K were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Farmer and Hansen attesting to the accuracy of the financial statements and the disclosure of all fraud.

22. In the 2017 10-K, Cintas stated its "Identifiable intangible assets" at $536,000,000. With their amortization periods of 15 years for $519,000,000 and 3 years for $17,000, the total amortization would only reach $40,266,666.67.

23. On September 26, 2017, during the Company's first quarter 2018 earnings call, Defendant

5

Hansen claimed that "**The Cintas legacy gross margins continue to expand and the G&K gross margins will too** as we realize the acquisition synergies." (Emphasis added.)

24. On March 22, 2018, during the Company's third quarter 2018 earnings call, Defendant Adler stated:

> While the assimilation of the G&K business continues at a great pace--Mike mentioned 95% of duplicate operations have been closed, more work remains. *The G&K gross margins will improve to Cintas legacy levels* as we further integrate this business and we increasingly realize more of the synergies. We are on track.
>
> (Emphasis added.)

25. On September 24, 2019, during the Company's first quarter 2020 Earnings Call, Defendant Hansen stated:

> Well, as you referred to (gross margins), it's really hard to say. So for example, a lot of that G&K volume resides in legacy Cintas locations. So when you think about that volume, it certainly has helped us in those kinds of locations create more capacity utilization, create a little more density. And so there certainly is a benefit. From stand-alone locations, many of them have inherited some legacy Cintas volumes, but they're not quite to where we would see the rest of the Cintas legacy locations, but they're making nice progress. So we hope to continue to see improvements as we move forward.

26. On September 14, 2016, G&K filed with the SEC a Proxy Statement on Schedule 14A ("G&K Proxy Statement"). In the G&K Proxy Statement, total sales of G&K were projected be $960,000,000, $1,001,000,000, and $1,065,000,000, in fiscal years 2016, 2017, and 2018, respectively.

27. On September 29, 2016, Cintas filed a Form 8-K with the SEC announcing the "Second Request" by the Federal Trade Commission and incorporating the G&K Proxy Statement as the location of "Additional Information and Where to Find it[.]" This 8-K was signed by Defendant Hansen.

28. On July 20, 2017, Defendant Farmer stated the following:

> Our guidance includes the following assumptions related to the acquired G&K

6

business: no transaction and integration expenses; revenue of $870 million to $900 million, compared to a prior year run rate of $965 million.

29. This revenue figure was $165,000,000 to $195,000,000 below the G&K Proxy Statement figures.

30. On July 20, 2017, Cintas filed its Fiscal 2017 Fourth Quarter Results on Form 8-K ("Q4 2017 Results") which was signed by Defendant Hansen. The Q4 2017 Results provided revenue guidance between $6,270,000,000 and $6,360,000,000.

31. On September 26, 2017, Cintas filed its Fiscal 2018 First Quarter Results on Form 8-K ("Q1 2018 Results") which was signed by Defendant Hansen. The Q1 2018 Results provided revenue guidance between $6,350,000,000 and $6,400,000,000, raising guidance for the year.

32. On December 21, 2017, Cintas filed its Fiscal 2018 Second Quarter Results on Form 8-K ("Q2 2018 Results") which was signed by Defendant Hansen. The Q2 2018 Results provided revenue guidance between $6,365,000,000 and $6,430,000,000, again, raising guidance for the year.

33. On July 27, 2018, Cintas filed its Annual Report with the SEC on Form 10-K ("2018 10-K"). The 2018 10-K was signed by Defendants Farmer and Hansen. Attached to the 2018 10-K were certification pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Farmer and Hansen attesting to the accuracy of financial reporting and disclosure of all fraud.

34. The 2018 10-K reported total revenue for the fiscal year ended May 31, 2018 at $6,476,632,000.

35. The 2018 10-K total reported revenue was roughly $160,000,000 higher than the Q4 2017 Results guidance midpoint. Which was in line with the G&K Proxy Statement's figures and opposed to Defendant Farmer's statement in July 2017 which purported to include assumptions related to the G&K acquisition.

36. On July 26, 2019, Cintas filed its annual report on Form 10-K with the SEC for the year ended May 31, 2019 (the "2019 10-K"). The 2019 10-K was signed by Defendants Farmer and Hansen. Attached to the 2019 10-K were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Farmer and Hansen attesting to the accuracy of the financial statements and the disclosure of all fraud.

37. Noting some of the risk of non-compliance with laws and regulations, Cintas provided the following in the 2019 10-K:

> *Failure to comply with federal and state regulations to which we are subject could result in penalties or costs that could adversely affect our results of operations.*
> Our business is subject to complex and stringent state and federal regulations, including employment laws and regulations, minimum wage requirements, overtime requirements, working condition requirements, citizenship requirements, transportation and other laws and regulations. In particular, we are subject to the regulations promulgated by the U.S. Department of Transportation, or USDOT, and under the Occupational Safety and Health Act of 1970, as amended, or OSHA. ***We have incurred, and will continue to incur, capital and operating expenditures and other costs in the ordinary course of our business in complying with the USDOT, OSHA and other laws and regulations to which we are subject***. Changes in laws, regulations and the related interpretations, including any laws or regulations that may be enacted by the current U.S. presidential administration and Congress, may alter the landscape in which we do business and may affect our costs of doing business. The impact of new laws and regulations cannot be predicted. Compliance with new laws and regulations may increase our operating costs or require significant capital expenditures. ***Any failure to comply with applicable laws or regulations could result in substantial fines by government authorities, payment of damages to private litigants, or possible revocation of our authority to conduct our operations, which could adversely affect our ability to service customers and our consolidated results of operations.***

(Emphasis added.)

38. Incorporated in the 2016, 2017, 2018, and 2019 10-Ks is the Credit Agreement dated May 28, 2004 by and among Cintas Corporation No. 2 [a Cintas subsidiary, d/b/a Cintas Fire Protection], as Borrower, the lenders named in such Credit Agreement and KeyBank National Association, as agent for the lenders (Incorporated by reference to Cintas' Quarterly Report on

8

Form 10-Q for the quarter ended February 28, 2011).

39. The Credit Agreement states that each company must remain in compliance with all laws, and read in part:

> Section 6.3. <u>Compliance with Laws and Contracts</u>. Each Company:
>
> (a) holds permits, certificates, licenses, orders, registrations, franchises, authorizations, and other approvals from any Governmental Authority necessary for the conduct of its business and is in compliance with all applicable laws relating thereto;
>
> (b) *is in compliance with all federal, state, local, or foreign applicable statutes, rules, regulations, and orders including, without limitation, those relating to environmental protection, occupational safety and health, and equal employment practice*s; and
>
> (c) is not in violation of or in default under any agreement to which it is a party or by which its assets are subject or bound;
>
> except where the failure to hold such permits, certificates, licenses, orders, registrations, franchises, authorizations or approvals, or where any such non-compliance or violation, would not reasonably be expected to have a Material Adverse Effect.
>
> (Emphasis added.)

40. The 2019 10-K, regarding Cintas' debt agreements and covenants, stated the following, in relevant part:

> Cintas has certain covenants related to debt agreements. These covenants limit Cintas' ability to incur certain liens, to engage in sale-leaseback transactions and to merge, consolidate or sell all or substantially all of Cintas' assets. These covenants also require Cintas to maintain certain debt to consolidated earnings before interest, taxes, depreciation and amortization (EBITDA) and interest coverage ratios. Cross-default provisions exist between certain debt instruments. If a default of a significant covenant were to occur, the default could result in an acceleration of the maturity of the indebtedness, impair liquidity and limit the ability to raise future capital. Cintas was in compliance with all of the debt covenants for all periods presented.

41. The statements contained in ¶¶17-40 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's

9

business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Cintas never tracked legacy margins following the G&K acquisition; (2) the Company has systematically provided guidance with which it would outperform (a "Beat and Raise" scheme); (3) undisclosed to the investing public, the Company has breached the law multiple times; (4) as a result of public and undisclosed breaches of law, the Credit Agreement may be jeopardized; and (5) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

42. On November 13, 2019, Spruce Point Capital Management released an investment research report (the "Spruce Point Report") detailing several major issues with Cintas.

43. The Spruce Point Report found that Cintas's management repeatedly claimed that the G&K acquisition would improve Cintas's legacy margins while it was discussing the acquisition to investors. Cintas never developed or implemented measures to specifically track Cintas legacy margins, as opposed to Defendant Hansen's statements during the Q1 2018 Earnings Call.

44. The Spruce Point Report found that Cintas has repeatedly set low financial projections, only to raise and beat them, even in the face of G&K's own projections prior to the acquisition as part of a "Beat and Raise" scheme.

45. The Spruce Point Report found that unbeknownst to investors, Cintas, specifically its Fire Protection Services business, has materially breached the law on at least three occasions, jeopardizing its Credit Agreement. Spruce Point relied on Freedom of Information Requests to gain much of the information regarding the breaches of law connected to Cintas's Fire Protection

10

Services business.

46. On May 26, 2019, following a fire in Aurora, Illinois, the Aurora Fire Department's inspection revealed that Cintas's employee who filled out the paperwork regarding the building's sprinkler system's test and inspection was not licensed. The Fire Department's full investigation into Cintas revealed that eight of the twelve Cintas inspectors in Aurora were not licensed by the State of Illinois for these inspections.

47. Similarly, in Indiana, the City of Hobart Fire Marshall filed a complaint with the Contractor's Licensing Board after noticing that Cintas had performed work without a contractor's license. Cintas inspected a fire system without proper licensing or protocol – including not disabling the system before inspection nor setting up a fire watch while the system was down.

48. In addition to the above, Cintas' failure to ensure that a haul truck's fire suppression system was installed and maintained resulted in a death on September 7, 2018 at the Bear Run Mine in Carlisle, Indiana. As noted in the U.S. Department of Labor Mine and Safety Administration Coal Mine Safety and Health Report of Investigation, the "Root Cause" of the fatal equipment fire accident was:

> The mine operator and Cintas did not ensure the fire suppression system on the Caterpillar 793C haul truck, company number 2-170, was installed and maintained in accordance with manufacturer's recommendations.

49. On this news, shares of Cintas fell $3.61 per share to close at $255.24 per share on November 13, 2019, damaging investors.

50. As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Cintas securities publicly traded on the NASDAQ exchange during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Cintas, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

52. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Cintas securities were actively traded on the NASDAQ exchange. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

53. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

54. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

55. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Cintas;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Cintas to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Cintas securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

56. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

57. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Cintas shares met the requirements for listing, and were listed and actively traded on the NASDAQ exchange, an efficient market;

- As a public issuer, Cintas filed periodic public reports;

- Cintas regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Cintas's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Cintas was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

58. Based on the foregoing, the market for Cintas securities promptly digested current information regarding Cintas from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

59. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

## For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder

## Against All Defendants

60. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

62. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

63. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Cintas securities during the Class Period.

64. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Cintas were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly

15

and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Cintas, their control over, and/or receipt and/or modification of Cintas's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Cintas, participated in the fraudulent scheme alleged herein.

65. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Cintas personnel to members of the investing public, including Plaintiff and the Class.

66. As a result of the foregoing, the market price of Cintas securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Cintas securities during the Class Period in purchasing Cintas securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

67. Had Plaintiff and the other members of the Class been aware that the market price of Cintas securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Cintas securities at the artificially inflated prices that they did, or at all.

68. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

69. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Cintas securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act

### Against the Individual Defendants

70. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71. During the Class Period, the Individual Defendants participated in the operation and management of Cintas, and conducted and participated, directly and indirectly, in the conduct of Cintas's business affairs. Because of their senior positions, they knew the adverse non-public information about Cintas's misstatement of revenue and profit and false financial statements.

72. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Cintas's financial condition and results of operations, and to correct promptly any public statements issued by Cintas which had become materially false or misleading.

73. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Cintas disseminated in the marketplace during the Class Period concerning Cintas's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Cintas to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Cintas within the meaning of

Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Cintas securities.

74. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Cintas.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 12, 2019                     Respectfully submitted,

By: */s/Daniel R. Karon*
Daniel R. Karon (0069304)
Beau D. Hollowell (0080704)
**KARON LLC**
700 W. St. Clair Ave, Ste. 200
Cleveland, Ohio 44113
Tel.: 216.622.1851
Fax: 216.241.8175
Email: dkaron@karonllc.com
          bhollowell@karonllc.com

*Liaison Counsel*


**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

*Counsel for Plaintiff*